UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        Plaintiff,

                                                            DECISION AND ORDER

                                                            00-CR-6049L

          v.

SINCERRAY SULLIVAN,

                        Defendant.
_____

UNITED STATES OF AMERICA,

                        Plaintiff,

          v.                                                        04-CR-6130L

ZECHARIAH BURNETT,

                        Defendant.
_____

**INTRODUCTION**

Attorney Michael J. Tallon, Esq. ("Tallon") is retained counsel for both defendants, Sincerray Sullivan ("Sullivan") and Zechariah Burnett ("Burnett"). Tallon represents Sullivan on a petition alleging a violation of probation, which was filed February 18, 2005. Tallon also represents Burnett in a three-count indictment charging Burnett with possession of cocaine and possession of a firearm in furtherance of a drug trafficking crime. Burnett's arrest stems from an alleged shooting that occurred on or about August 4, 2004, near Central Park and Third Street in Rochester, New York.

Pending before the Court is the Government's motion to disqualify attorney Tallon from representing both defendants based on a conflict of interest. The Government's motion was filed April 29, 2005. Tallon filed a declaration opposing the motion on May 18, 2005, and the Court heard argument on the motions on June 8, 2005.

Apparently defendants Sullivan and Burnett know each other and may have some personal relationship. The Government has several bases for seeking Tallon's removal because of what the Government perceives to be a clear conflict of interest.

First of all, the Government represents that Sullivan may be a witness in the case against Burnett. Sullivan was interviewed by law enforcement officers and allegedly put Burnett at the scene of the shooting. She apparently also provided some information to the officers that Burnett and the victim of the shooting had been arguing with each other just prior to the shooting. The Assistant United States Attorney handling the Burnett case also represented that Sullivan may have given somewhat conflicting statements about the matter. The Government's concern is an obvious one: Tallon represents both Sullivan and Burnett; he has an obvious conflict since he

may be forced when representing Burnett to question or cross-examine Sullivan should she in fact be called as a Government witness. Although Sullivan indicated some reluctance to testify when the Court questioned her on June 8, it is apparent that the Government intends to further question her and subpoena her for trial, if necessary.

The Government also indicated that it wished to attempt to get more information from Sullivan against Burnett, and that there was some indication at least that her cooperation against Burnett might lead to more favorable consideration from the Government concerning Sullivan's own criminal matter, the allegation that she violated probation. Furthermore, the Government represented that it had some information that Sullivan may have taken steps to threaten a potential witness against Burnett.

On June 8, 2005, I did question Sullivan and she indicated quite strongly that she understood the potential conflict but still wished Tallon to be her lawyer. The Court has not yet spoken to Burnett about the matter.

**DISCUSSION**

"A defendant's Sixth Amendment right to the effective assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest." *United States v. Blount*, 291 F.3d 201, 210 (2d Cir. 2002) (citing *Mickens v. Taylor*, 535 U.S. 162 (2002)), *cert. denied*, 537 U.S. 1141 (2003). The Sixth Amendment right to counsel is not absolute; although a defendant's choice of counsel is presumptively favored, a determination of disqualification by the court will be sustained where the court, in its sound discretion, finds either an actual conflict or a serious potential for conflict. *Wheat v. United States*, 486 U.S. 153, 164 (1988).

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation omitted), *cert. denied*, 511 U.S. 1022 (1994). "An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004), *cert. denied*, 125 S.Ct. 916 (2005).

When a court has been advised of either a potential or actual conflict of interest between the defendant's attorney and the defendant, the court has an obligation to make a further inquiry. If a conflict, actual or potential, threatens to compromise either the adequate representation of a defendant or the institutional interest in rendering a just verdict, "a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993). "If the court discovers that the attorney suffers from a severe conflict–such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation–the court is obliged to disqualify the attorney." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). "Among the situations where such disqualification is likely to arise, '[t]he most typical is where an actual conflict arises from a multiple representation.'" *United States v. Muflahi*, 317 F.Supp.2d 208, 212 (W.D.N.Y. 2003) (quoting *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994)).

In the case at bar, I find that Tallon has an actual conflict of interest, and that disqualification is mandated. Even if I were to find that only a potential conflict exists, however, I would in my discretion disqualify Tallon from representing both Sullivan and Burnett because

of the risk that their competing interests could prevent Tallon from adequately representing them both.

As noted, the Government has stated its intention to call Sullivan as a witness in the case against Burnett. Although it is unclear at this point what the gist of her testimony would be concerning Burnett's role in the August 4 shooting, if she were to testify consistent with her alleged statement to investigators that Burnett was at the scene of the shooting and had been arguing with the victim, Tallon, as Burnett's attorney, would certainly want to discredit Sullivan's testimony. In his role as Sullivan's attorney, however, Tallon would not be able ethically to do so. *See United States v. Alvarez*, 580 F.2d 1251, 1258 (5th Cir. 1978) ("defense counsel [who represents both defendant and government witness] is torn between serving the witness' best interests in fully cooperating with the government in supplying credible testimony and the accused's obvious desire to discredit the witness' testimony. The Constitution does not countenance such divided loyalties"); *United States v. Rodriguez*, No. 99 CR 166, 1999 WL 314162, at *2 (E.D.N.Y. May 18, 1999) (noting that "[b]ecause of his obligations to [a client who was cooperating witness for the government, defendant's attorney] will be required to forego effective cross-examination of [witness] on behalf of" defendant).

Similarly, in *United States v. Malpiedi*, 62 F.3d 465 (2d Cir. 1995), the defendant's attorney had previously represented an important government witness ("Goldfine") during grand jury proceedings. On appeal from the defendant's conviction, the Second Circuit vacated and remanded, finding that the attorney had an actual conflict of interest "because his duty to Goldfine conflicted with [defendant] Delli Bovi's interest in a full and effective cross-examination of Goldfine." *Id.* at 469. The court stated that it was "in Delli Bovi's interest to have his attorney conduct a thorough, no-holds-barred cross-examination of Goldfine," and

that his attorney "was unable to cross-examine Goldfine on her testimony during her first grand jury appearance because of his obligations as her prior attorney and her invocation of the attorney-client privilege." *Id.*

In addition, the Government has indicated that it may be open to the idea of giving Sullivan some consideration in the case against her if she cooperates in the case against Burnett. By representing both Sullivan and Burnett simultaneously, Tallon would find it virtually impossible to give Sullivan unbiased advice about whether to cooperate without violating his obligations to Burnett.

The case law supports this view. In *Muflahi*, for example, the court held that an actual conflict of interest existed because of defense counsel's joint representation of separately charged store employees in a felony food stamp fraud prosecution in which store owner was also charged, given the government's offer to the employees to plead to misdemeanors in return for testimony against owner and, if necessary, against each other. The court reasoned that counsels' representation of one employee was inherently adverse to the interests of the other employee in deciding, with the objective assistance of counsel, whether to accept the proffered plea, stating that "[c]ounsel may entertain the notion that they can perform this Janus-like feat without violating their respective duty of zealous representation to both Defendants but the court thinks otherwise." 317 F.Supp.2d at 214. *See also United States v. Yannotti*, 358 F.Supp.2d 289, 292 (S.D.N.Y. 2004) (defense counsel had conflict of interest because his father and uncle were allegedly high-ranking officials in same crime family as defendant; noting that although defendant had some incentive to cooperate with the government, "[i]t appears unlikely ... that [attorney] would advise his client to make a deal since [the client] may be able to provide information and testimony that the government could use against" attorney's father and uncle);

*cf. Rodriguez*, 1999 WL 314162, at *2 (noting that attorney who represented cooperating witness and defendant would be conflicted in advising defendant whether to accept plea offer, since as attorney for witness, attorney's interest was to obtain as many convictions as possible).

Some of these matters, of course, depend on how events unfold in these cases. That it is impossible to say with certainty at this point how Sullivan would testify, or whether she would be willing to cooperate with the Government in its case against Burnett in exchange for some benefit in her own case, does not mean that disqualification is not warranted, in spite of Sullivan's waiver. As the Supreme Court observed in *Wheat*,

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

482 U.S. at 162-63. It is for those reasons, the Court concluded, that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. *See also Jones*, 381 F.3d at 120 ("in situations where a potential conflict exists, one that may ripen into an actual conflict as the trial progresses, district courts must have latitude to permit or deny a defendant's waiver of such conflict").

I conclude, therefore, that Tallon cannot represent both Sullivan and Burnett, regardless of whether his clients would waive their rights to a non-conflicted attorney.  At this point, however, I see no reason why Tallon could not ethically continue to represent either Sullivan or Burnett.  I therefore leave it up to Tallon to decide which one he chooses to represent.[1]

---

[1] I note, however, that if Tallon chooses to represent Burnett, there is a potential conflict issue should Sullivan testify for the Government, since when cross-examining Sullivan, Tallon would be prohibited from using any confidential information obtained from her while she was his client.  *See Malpiedi*, 62 F.3d at 469.  Since the case against Sullivan is factually unrelated to Burnett's case, however, it appears unlikely that Tallon would be in a position to do so anyway.  At this point, then, that potential conflict is too remote to warrant disqualification.

## CONCLUSION

The Government's motion to disqualify defense counsel Michael J. Tallon from representing both Sincerray Sullivan and Zechariah Burnett is granted.[2] Tallon is directed to advise the Court, in writing, within ten (10) days as to his election so that the other client can proceed to obtain new counsel.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 12, 2005.

---

[2] The motion was actually filed in the case against Sullivan, 00-CR-6049L, (Dkt. #140).